AUSA MICHAEL FERRARA, (312) 886-7649

# UNITED STATES DISTRICT COURT

NOV 3 0 2007

_____NORTHERN_____ DISTRICT OF _____ILLINOIS, EASTERN DIVISION_____

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

**F I L E D**

**CRIMINAL COMPLAINT**

v.

11-30-07
NOV 3 0 2007

DAVID P. ESTRADA, and
STEVEN R. RANGEL

CASE NUMBER **07 CR    789**

MAGISTRATE JUDGE JEFFREY COLE
UNITED STATES DISTRICT COURT

**MAGISTRATE JUDGE COLE**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about November 6, 2007 to November 28, 2007, in Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants:

conspired to knowingly and intentionally distribute, and possess with intent to distribute a controlled substance, namely 500 grams or more of a mixture containing cocaine, a Schedule II Narcotic Drug Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1); all

in violation of Title 21 United States Code, Section 846;.

I further state that I am a Drug Enforcement Administration Task Force Officer and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof:  X  Yes  _____ No

Thomas Evans, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

_____November 30, 2007_____
Date

at  Chicago, Illinois
City and State

_____Jeffrey Cole, United States Magistrate Judge_____
Name & Title of Judicial Officer

Signature of Judicial Officer

STATE OF ILLINOIS          )
                           )      SS
COUNTY OF COOK             )

## AFFIDAVIT

I, Thomas Evans, having been duly sworn on oath, state as follows:

1.      I am a Special Agent with the Drug Enforcement Administaration.  I have been employed as a Special Agent since July, 1990 and I am currently assigned to the High Intensity Drug Trafficking Areas (HIDTA), Drug Enforcement Administration (DEA) Task Force, group 41 within the DEA Chicago Field Division, Chicago, Illinois.

2.      Thorough my career in the DEA, I have acted as the case agent in several narcotics conspiracy cases, and  have served as an undercover agent in many undercover narcotics transactions.  In my law enforcement career, I have conducted and participated in numerous investigations that have resulted in the seizures of controlled substances, including cocaine, cocaine base in the form of crack cocaine, marijuana and heroin.

3.      The information contained in this affidavit is based on my personal knowledge, as well as information obtained from official documents and the personal knowledge of other law enforcement officials, and has been obtained from surveillance, consensually-recorded conversations, lab reports and an undercover controlled narcotic transaction.

4.      This affidavit is being submitted for the limited purpose of setting forth probable cause to support a criminal complaint.  I have not set forth each and every fact known to me concerning this investigation.  Rather, I have set forth only those facts that I believe are sufficient to establish probable cause to believe that DAVID P. ESTRADA and STEVEN R.  RANGEL conspired to knowingly and intentionally distribute, or possess with intent to distribute a controlled

-1-

substance, namely cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

*November 6, 2007 Transaction*

5. On or about October 9, 2007, Undercover Law Enforcement Officer One ("UC1") placed a consensually recorded telephone call to ESTRADA to inquire about the purchase of crack cocaine. This call was placed to ESTRADA's cell phone (Nextel direct connect number 183*715*2318). During this call, ESTRADA told UC1 that he would sell the officer four and one half (4½) ounces of Crack Cocaine for $3,000. ESTRADA told the officer to call him back at the same number when he was ready to go forward with the transaction.

6. On or about November 5, 2007, UC1 placed a second consensually recorded call to ESTRADA. Again in this conversation, ESTRADA verifiied that he was willing to sell UC1 4½ ounces of crack for $3,000.

7. On or about November 6, 2007, UC1 placed a third consensually recorded telephone call to ESTRADA to set up a time and location to purchase the 4½ ounces of crack. During this call, ESTRADA and UC1 agreed to meet at a car wash near 26th Street and Francisco in Chicago, Illinois (across the street from Cook County Jail and Courthouse) to conduct this transaction.

8. A short time later on that same date, UC1 arrived at 2850 W. 26th St. Chicago, Illinois (the car wash parking lot) in an undercover car. Once there, UC1 was met by ESTRADA and RANGEL. RANGEL was driving a light brown Ford Windstar mini-van and ESTRADA was in the front passenger seat. ESTRADA got out of the van and got into UC1's undercover car. ESTRADA was carrying a small brown leather bag. ESTRADA then told UC1 to pull his/her car into the car wash stall, which UC1 did. ESTRADA then retrieved a clear knotted plastic bag from the small brown leather bag containing a white, chunky powder-like substance and handed it to UC1.

-2-

9.    UC1 told ESTRADA that what ESTRADA gave him did not look like crack. ESTRADA told UC1 that even though they had agreed on a crack transaction, he only sold cocaine powder. After a short conversation on this subject during which ESTRADA insisted that he would only deal in cocaine power, UC1 agreed to take the powder instead. UC1 then paid ESTRADA $3000 for the cocaine powder. After taking the money, ESTRADA got out of the undercover car and returned to the van.

10.    UC1 then went to the Chicago Police Department, Narcotics and Gang Investigation section and observed as another law enforcement agent analyzed the contents of the bag he purchased from ESTRADA by utilizing a narcotics field test kit. This analysis showed that the substance purchased from ESTRADA weighed approximately 126 grams and tested positive for the presence of cocaine.

*November 28, 2007 Transaction*

11.    On or about November 26, 2007, UC1 again placed a consensually recorded call to ESTRADA at Nextel direct connect number 183*715*2318. During this call, UC1 told ESTRADA that he was interested in buying a ½ kilo of cocaine. ESTRADA informed UC1 that this would not be a problem. UC1 and Estrada then negotiated the price for this transaction, and eventually agreed that ESTRADA would sell UC1 the ½ kilo of cocaine in exchange for $10,500. ESTRADA and UC1 further agreed that the transaction would occur at the same location as before, the car wash located at 2850 W. 26th St. Chicago, IL.

12.    During this consensually recorded conversation, ESTRADA and UC1 agreed that this transaction would occur around 1:00 P.M. on or about November 27, 2007. However, later on or about November 26, 2007, UC1 placed another consensually recorded call to ESTRADA and asked

to move the transaction to on or around November 28, 2007 at approximately 10:00 A.M. ESTRADA agreed to this change. The location of the transaction did not change from the same car wash on 26th Street.

13.    On or about November 28, 2007, UC1 again drove to 2850 W. 26th St. Chicago, Illinois (the car wash parking lot) in an undercover car. A short time later, a light brown Ford Windstar mini van pulled up. Inside the van were ESTRADA, RANGEL, and a woman. ESTRADA got out of the passenger's side of this van and got into UC1's undercover car. As before, ESTRADA asked UC1 to pull into a car wash stall, which UC1 did. ESTRADA then retrieved a small brick-like package containing a white powder-like substance and handed it to UC1. UC1 examined the package, and after telling ESTRADA that he was satisfied with its contents, UC1 then told ESTRADA that he needed to retrieve the $10,500 from the trunk of his car.

14.    After UC1 got out of his car, he gave an arrest signal and ESTRADA was taken into custody. UC1 observed as another law enforcement agent analyzed the contents of the bag he purchased from ESTRADA by utilizing a field test kit. This analysis showed that the substance purchased from ESTRADA weighed approximately 500 grams and tested positive for the presence of cocaine.

15.    At the time ESTRADA was arrested, law enforcement agents also approached the light brown Ford Windstar mini-van. RANGEL was inside this van and was also taken into custody. After being advised of his Miranda rights and signing a written document waiving them, RANGEL provided law enforcement agents with a statement. In this statement, RANGEL admitted that ESTRADA had informed him that he had a person interested in buying a ½ kilo of cocaine. RANGEL further admitted that he acquired the cocaine for this transaction. RANGEL admitted that

he had supplied cocaine to ESTRADA on other occasions in the past.

17.    RANGEL was confronted by agents with allegations that he had additional narcotics at his residence of 3012 South Trumbull, Chicago, Illinois.  RANGEL admitted that he did in fact have an additional amount of cocaine at his residence.   RANGEL then provided agents with a written consent to search his home.  Agents performed this search and recovered a substance that they believed to be cocaine.  This analysis showed that the substance recovered weighed approximately 200 grams and tested positive for the presence of cocaine. .

**Conclusion**

18.    Based on the aforementioned facts, I respectfully request that a criminal complaint be issued charging DAVID P. ESTRADA and STEVEN R. RANGEL with conspiring to knowingly and intentional distribute, and possess with intent to distribute a controlled substance, namely cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

Thomas Evans
Special Agent
Drug Enforcement Administration

Subscribed and sworn before
me this 30th day of November, 2007.

U.S. Magistrate Judge

-5-